## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **MATT AND ANN MALONEY, as the Surviving Parents of DIANA MALONEY, deceased,** | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | **CIVIL ACTION FILE NO.:** |
| **SOUTHERN HEALTH PARTNERS, INC., BETTY EVANS, LPN, and JAMES GRAHAM, M.D.,** | |
| Defendants. | |

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Matt Maloney and Ann Maloney, as the Surviving Parents of Diana Maloney, deceased, and file this Complaint for Damages against Defendants Southern Health Partners, Inc. (hereinafter "Southern Health Partners"), Betty Evans, LPN, and James Graham, M.D., and show this honorable Court as follows:

## PARTIES AND JURISDICTION

1.

Plaintiffs Matt Maloney and Ann Maloney are the surviving parents of Diana Maloney. Both Plaintiffs are citizens and residents of Florida. Diana Maloney did not have a spouse or children at the time of her death. As a result, her parents, Matt Maloney and Ann Maloney, have standing and are the proper parties to seek damages for the full value of Diana's life pursuant to Georgia's wrongful death statute. *See* O.C.G.A. § 51-4-2.

2.

Defendant Southern Health Partners is a foreign corporation organized and existing under the laws of the State of Delaware with its principal place of business in Tennessee. Defendant Southern Health Partners is authorized to transact business in Georgia. Defendant Southern Health Partners can be served with process on its registered agent, CSC of Stephens County, Inc., located at 597 Big A Road, Toccoa, GA, 30577, or as otherwise allowed by law.

3.

The Wilkinson County Jail is a correctional facility in Irwinton, Georgia, owned and operated by Wilkinson County under the Wilkinson County Sheriff's Office. The Wilkinson County Sheriff's Office is legally responsible for providing medical care to inmates in its custody at the Wilkinson County Jail. The Wilkinson County Sheriff's Office contracted with Southern Health Partners to provide medical care to inmates in its custody. At all relevant times to this action, Southern Health Partners provided healthcare to inmates in the custody of Wilkinson County Jail and the agents or employees of Southern Health Partners, including Defendant Evans and Defendant Graham, were acting under color of state law. At all relevant times to this action, a medical provider-patient relationship existed between Diana Maloney and Southern Health Partners and the individual agents or employees of that entity who were medical providers, including Defendant Evans and Defendant Graham.

4.

Defendants are being sued for state law negligence claims that include allegations of professional negligence. Even though O.C.G.A. § 9-11-9.1 does not apply in federal court, Plaintiffs have attached hereto and incorporated by reference as Exhibit "1" the Affidavit of Sylvie R. Stacy, M.D., M.P.H., who is qualified as an expert witness on the issues raised in the Complaint. Dr. Stacy's Affidavit specifies at least one negligent act or omission on the part of the agents and employees of Southern Health Partners, and the factual basis that underlies the negligent act or omission.

5.

Defendant 00 is a citizen and resident of Georgia. Defendant Evans is a Licensed Practical Nurse licensed under the laws of the State of Georgia. At all relevant times, Defendant Evans was acting as an agent or employee of Southern Health Partners and was acting under the color of state law. Defendant Evans may be served with Summons and Complaint at her residence, or as otherwise allowed by law.

6.

Defendant Dr. James Graham is a citizen and resident of Georgia. Dr. Graham is a physician licensed under the laws of the State of Georgia. At all relevant times, Dr. Graham was acting as an agent or employee of Southern Health Partners and was acting under the color of state law. Defendant Graham may be served with Summons and Complaint at his residence, 50 Surrey Circle, Tifton, Georgia 31793, or as otherwise allowed by law.

7.

Jurisdiction and venue are proper in this Court. Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiffs and Defendants, and Plaintiffs are seeking far in excess of $75,000.00. In addition, federal subject matter jurisdiction also exists under 28 U.S.C. § 1331 because Plaintiffs have pled federal claims under 42 U.S.C. § 1983, and this Court would also have supplemental jurisdiction over the related state law claims. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Wilkinson County, Georgia, which is in this District and Division.

## FACTUAL ALLEGATIONS

8.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were restated verbatim herein.

9.

On January 30, 2024, Diana Maloney was arrested on various drug charges and transported to the Wilkinson County Jail.

10.

Diana Maloney was a female who was addicted to fentanyl at the time of her arrest and incarceration.

11.

On February 3, 2024, at approximately 12:30 p.m., Diana was evaluated by Defendant Betty Evans, LPN, who was employed by Southern Health Partners as a nurse and Medical Team Administrator at the Wilkinson County Jail.

12.

During this evaluation, Diana reported that she was withdrawing from drugs and had a history of using fentanyl for years. Diana exhibited clear signs of opioid withdrawal, including twitching, sweating, and stomach cramps. Her vital signs showed a blood pressure of 138/88 and a pulse of 95.

13.

Defendant Evans contacted Defendant Dr. James Graham, who ordered the following medications:

- Librium 50 mg 1 p.o. BID x 5 days, then Librium 25 mg 1 p.o. BID x 5 days, then Librium 25 mg 1 p.o. q HS x days then d/c

- Phenergan 25 mg 1 p.o. bid PRN for nausea x 6 days

- Ibuprofen 800 mg 1 p.o. BID x 5 days

- Bentyl 20 mg 1 p.o. BID PRN stomach cramps x 6 days

- Loperamide 2 mg 1 p.o. PRN for diarrhea then d/c

14.

Dr. Graham also ordered that Diana be placed on observation watch.

15.

Librium is indicated for alcohol withdrawal, not opioid withdrawal.

16.

Despite prescriptions being written on February 3, 2024, no medications were administered to Diana on that date according to the Medication Administration Record.

17.

The Medication Administration Record indicates that Diana received only one dose of medications on the morning of February 4, 2024.

18.

The Medication Administration Record reflects that the only medications administered to Diana on the morning of February 4, 2024, were Librium, Promethazine (Phenergan) and Ibuprofen.

19.

Diana was never given Bentyl or Loperamide.

20.

Defendant Evans failed to implement Defendant Graham's order that Diana be placed on observation watch, and Diana was not placed on observation watch.

21.

Southern Health Partners staff, including Defendants Evans and Graham, failed to perform proper withdrawal assessments using standardized tools such as the Clinical Opiate Withdrawal Scale (COWS), which is the standard assessment tool for evaluating and monitoring opioid withdrawal.

22.

On February 4, 2024, at approximately 3:48 p.m., EMS was called to evaluate Diana for chest pain and reports of spitting up blood. Diana's blood pressure was 128/92 and her heart rate was 115. EMS records noted that Diana appeared to be in drug withdrawal.

23.

Despite Diana's worsening condition and clear signs of inadequately managed opioid withdrawal, Southern Health Partners staff failed to perform proper assessments, failed to administer prescribed medications as ordered, and failed to provide appropriate medical care for opioid withdrawal.

24.

Defendant Evans later documented in the records: "No alcohol/drug withdrawal had been done by staff."

25.

The last documented observation of Diana by jail staff was at approximately 11:00 p.m. on February 4, 2024.

26.

On February 5, 2024, at approximately 4:15 a.m., Diana Maloney was found dead in her cell, having committed suicide by hanging herself with a sheet tied around her neck.

27.

Diana's death was a direct and proximate result of the inadequate and improper medical care she received for her opioid withdrawal, which created severe psychological distress and substantially increased her risk of suicide.

## <u>COUNT I: STATE LAW PROFESSIONAL NEGLIGENCE CLAIMS AGAINST DEFENDANTS SOUTHERN HEALTH PARTNERS, BETTY EVANS, AND DR. JAMES GRAHAM</u>

28.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

29.

At all relevant times, Defendants Evans and Graham were acting as agents or employees of Southern Health Partners.

30.

The individual medical providers working for Defendant Southern Health Partners who interacted with, treated, evaluated, diagnosed, or made any medical decisions regarding Diana Maloney, including Defendants Evans and Graham, had a duty to exercise ordinary care, skill, and diligence in evaluating, diagnosing, and treating Diana Maloney in a manner that was in accordance with the applicable professional standard of care for patients under the same or similar circumstances and conditions as Diana Maloney.

31.

Defendants Southern Health Partners, Evans, and Graham breached their duty to exercise ordinary care, skill, and diligence in evaluating, diagnosing, and treating Diana Maloney in at least the following particulars:

a. Failing to perform proper assessments using standardized, validated tools such as the Clinical Opiate Withdrawal Scale (COWS) when Diana presented with opioid

withdrawal on February 3, 2024, and failing to conduct ongoing COWS assessments three times daily to monitor her withdrawal symptoms;

b. Dr. Graham prescribing Librium, a benzodiazepine indicated for alcohol withdrawal, instead of appropriate medications for opioid withdrawal such as methadone or buprenorphine (Suboxone), which are the standard of care for managing opioid withdrawal;

c. Failing to administer prescribed medications as ordered, with the Medication Administration Record showing no medications were given on February 3, 2024, three medications given only once on February 4, 2024 (despite being prescribed twice daily), and some medications not being administered at any time;

d. Failing to perform proper assessments when Diana complained of chest pain and reported spitting up blood on February 4, 2024, including failing to conduct a focused history and physical examination, basic labs, chest imaging, and COWS assessment to evaluate her withdrawal status; and

e. Failing to recognize and properly manage the psychological distress and increased suicide risk associated with acute opioid withdrawal.

32.

Although O.C.G.A. § 9-11-9.1 does not apply in federal court, Plaintiffs have attached as Exhibit 1 the Affidavit of Sylvie R. Stacy, M.D., M.P.H., who is qualified as an expert witness on the issues raised in this Complaint. Dr. Stacy's Affidavit specifies at least one negligent act or omission on the part of agents and employees of Southern Health

Partners, and the factual basis that underlies the negligent act or omissions that resulted in the death of Diana Maloney.

33.

Defendant Southern Health Partners is liable for the negligent acts and omissions of its agents and employees under the doctrine of *respondeat superior*.

34.

As a direct and proximate result of the professional negligence of Defendants Southern Health Partners, Evans, and Graham, Diana Maloney died. As a result, Plaintiffs Matt Maloney and Ann Maloney, as the surviving parents of Diana Maloney, are entitled to damages for the full value of Diana Maloney's life.

**COUNT II: STATE LAW ORDINARY NEGLIGENCE CLAIM AGAINST
DEFENDANT SOUTHERN HEALTH PARTNERS**

35.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

36.

Southern Health Partners had a duty to exercise ordinary care in properly training, supervising, and instructing its employees and agents, including Defendant Evans and Defendant Graham.

37.

Southern Health Partners had a duty to exercise ordinary care in creating and implementing rules, policies, procedures, and guidelines for the management and treatment

10

of inmates at the Wilkinson County Jail, including inmates experiencing withdrawal and opioid use disorder.

38.

Southern Health Partners had a duty to exercise ordinary care to make appropriate medications available for prescription and use by inmates at the Wilkinson County Jail to treat reasonably foreseeable medical conditions, including medications for the treatment of withdrawal and opioid use disorder.

39.

Southern Health Partners breached its duty to exercise ordinary care in at least the following particulars:

a. Southern Health Partners failed to exercise ordinary care in properly training, supervising, and instructing its employees and agents, including Defendant Evans and Defendant Graham;

b. Southern Health Partners failed to exercise ordinary care in creating and implementing rules, policies, procedures, and guidelines for the management and treatment of inmates at the Wilkinson County Jail, including inmates experiencing withdrawal and opioid use disorder.

c. Southern Health Partners failed to exercise ordinary care to make appropriate medications available for prescription and use by inmates at the Wilkinson County Jail to treat reasonably foreseeable medical conditions such as withdrawal and opioid use disorder, including methadone and buprenorphine.

40.

Southern Health Partners' breach of its duty to exercise ordinary care resulted in Diana Maloney's withdrawal and opioid use disorder being inappropriately treated and mismanaged, which resulted in her committing suicide.

41.

As a direct and proximate result of the ordinary negligence of Defendant Southern Health Partners, Diana Maloney died. As a result, Plaintiffs Matt Maloney and Ann Maloney, as the surviving parents of Diana Maloney, are entitled to damages for the full value of Diana Maloney's life.

**COUNT III: CLAIM UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT BETTY EVANS FOR FAILURE TO PROVIDE MEDICAL TREATMENT TO DIANA MALONEY IN VIOLATION OF THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION**

42.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

43.

At all times relevant to this action, Defendant Betty Evans was acting under the color of state law.

44.

Opioid use disorder and withdrawal from opioids are a serious medical need. *See, e.g., Ferguson v. Palm Beach Cty. Sheriff's Dept. of Corr.*, ___ F. Supp. 3d ___, 2025 WL 1634734 (S.D. Fla. 2025) ("Federal courts around the country have held that opioid use

disorder, including the side effects of forced withdrawal from opioid use, is a serious medical need.").

45.

When Diana Maloney was at the Wilkinson County Jail, she had serious medical needs that, if left unattended, posed a substantial risk of serious harm.

46.

Diana Maloney's serious medical needs were so obvious that a layperson would have easily recognized the need for medical treatment and a doctor's attention, and indeed, her serious medical needs were diagnosed and noted by Defendants Evans and Graham. Furthermore, a delay in treating Diana's medical conditions worsened her condition and ultimately resulted in her death.

47.

Defendant Evans was subjectively aware of Diana's serious medical needs and that there was a substantial risk of serious harm to Diana if those serious medical needs were not properly treated and monitored as Defendant Graham had ordered.

48.

Defendant Evans violated Diana Maloney's clearly established rights under the Fourteenth Amendment to the United States Constitution by acting with deliberate indifference and engaging in objectively unreasonable conduct in the treatment and management of Diana's opioid use disorder and withdrawal, in at least the following particulars:

a.  Defendant Evans failed to give Diana any of the medications on February 3rd that Dr. Graham had ordered;

b.  Defendant Evans only gave Diana one dose of Librium, Promethazine, and Ibuprofen on the morning of February 4th and did not give a second dose on the afternoon of February 4th as Defendant Graham had ordered;

c.  Defendant Evans did not give Diana any Bentyl or Loperamide despite Defendant Graham ordering those medications;

d.  Defendant Evans did not follow through on Defendant Graham's order that Diana be placed on observation watch, and did nothing to ensure that she was placed on observation watch; and

e.  Defendant Evans did not do any COWS assessments on Diana at any time, even though Diana's condition deteriorated on February 4th to the point that EMS had to be called.

49.

As a direct and proximate result of Defendant Evans' deliberate indifference to Diana Maloney's serious medical needs and objectively unreasonable conduct, Diana Maloney's 14th Amendment Rights under the United States Constitution were violated and she ultimately died. As a result, Plaintiffs are entitled to special and general damages.

## COUNT IV: ATTORNEY'S FEES UNDER O.C.G.A. § 13-6-11 AGAINST ALL DEFENDANTS

50.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were restated verbatim herein.

51.

Defendants' acts and omissions as described in this Complaint constitute bad faith in the underlying transaction. As a result, pursuant to O.C.G.A. § 13-6-11, Plaintiffs are entitled to an award of attorney's fees and expenses of litigation.

## COUNT V: CLAIM FOR ATTORNEY'S FEES AND EXPENSES OF LITIGATION UNDER 42 U.S.C. § 1988 AGAINST DEFENDANT EVANS

52.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were restated verbatim herein.

53.

Plaintiffs are entitled to attorney's fees and expenses of litigation from Defendant Evans pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray and demand as follows:

1) That Process and Summons issue, as provided by law, requiring Defendants to appear and answer Plaintiffs' Complaint;

2) That service be had upon Defendants as provided by law;

3) That the Court award and enter a judgment in favor of Plaintiffs and against Defendants for special and general damages in an amount to be proven at trial for Plaintiffs' state law claims;

4) That the Court award and enter a judgment in favor of Plaintiffs and against Defendant Evans for Plaintiffs' claims under 42 U.S.C. § 1983 for violation of Diana Maloney's constitutional rights under the 14th Amendment;

5) That the Court award and enter a judgment in favor of Plaintiffs and against Defendants for attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11;

6) That the Court award and enter a judgment in favor of Plaintiffs and against Defendant Evans for attorney's fees and expenses of litigation pursuant to 42 U.S.C. § 1988;

7) That Plaintiffs have a trial by a jury as to all issues; and

8) That Plaintiffs have such other and further relief as the Court may deem just and proper.

Respectfully submitted this 3rd day of October, 2025.

**THE CHAMPION FIRM, PERSONAL INJURY ATTORNEYS, P.C.**

*/s/ Darl H. Champion, Jr.*
Darl H. Champion, Jr.
Georgia Bar No. 910007
Franklin T. Gaddy
Georgia Bar No. 409238
W. Jackson Latty
Georgia Bar No. 889877
Attorneys for Plaintiffs

445 Franklin Gateway, SE
Suite 100
Marietta, GA 30067-7705
P:  (404) 596-8044
F:  (404) 671-9347
champ@thechampionfirm.com
frank@thechampionfirm.com
jackson@thechampionfirm.com

**GÓMEZ LAW GROUP, LLC**

*/s/ Debra G. Gómez*
Debra G. Gómez
Georgia Bar No. 300509
Attorney for Plaintiffs

P.O. Box 13523
1469 Oglethorpe Street
Macon, GA 31208
P:  (478) 744-0905
F:  (478) 845-3554
dgomez@gomezlawgroup.com